UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:04-cr-30

    HON. DAVID W. McKEAGUE

CRYSTAL LYNN DORSEY,

    Defendant.

_____/

**OPINION OF THE COURT**

It has been over six years since defendant pleaded guilty to the crime charged in the indictment and appeared before the court for sentencing. Sentence was not imposed at that time and sentencing has been deferred for various reasons ever since. Now before the Court are the government's motion for entry of sentence and defendant's motion to dismiss the indictment.

**I**

In September of 2004, Crystal Lynn Dorsey was charged in a single-count indictment with aiding and abetting the importation of oxycontin, a Schedule II controlled substance, into the United States from Canada, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2(a). In January of 2005, defendant Dorsey entered a plea of guilty in a proceeding before Magistrate Judge Timothy P. Greeley. On February 14, 2005, defendant's plea of guilty was accepted and she was adjudicated guilty of the offense charged. On April 19, 2005, defendant appeared before the Court for

sentencing.[1] The Court then informed defendant of its inclination to adopt a unique approach to her sentencing:

> Ms. Dorsey, I have been a federal judge for over 13 years now, and during that period of time, I've sentenced more than a thousand, so probably around 1,200 people. There are very few occasions, unfortunately, where I'm called upon to sentence young people where I think that they have both the intellectual ability and the family support to actually overcome whatever the problem is that has brought them before the Court to start with. Obviously, I've never seen you and you've never seen me, and all I know about you is the information that's contained in this written presentence report. When I read this presentence report in preparation for this sentencing today, it struck me that you became involved in these prescription drugs when you were a high school kid, when I'm assuming that you had the poor judgment to be hanging around with the wrong crowd, and that caused you to become addicted to those drugs. Notwithstanding the problems that you had with drugs, you still succeeded in having graduated from high school, which is kind of different, frankly, than a lot of the defendants we see; and even more importantly, you graduated with a 3.7, which is almost unheard of in connection with the defendants that appear in federal court. In addition to that, I was struck by the fact that you got into college, and you went to Big Rapids, and you did reasonably well for the first term. And my guess is that if you hadn't had some boyfriend problems and still were addressing this drug situation, you probably would have done considerably better than you did, because you certainly have the capability of doing that. That causes us to think about what's best in your life now.
>
> * * *
>
> My judgment is you deserve one more chance to demonstrate that you can, in fact, live according to society's rules, which means you don't do drugs, you don't smuggle drugs.

R. 42, Sent. Tr. at 2-4.

The Court then proposed delaying defendant's sentencing, releasing her on bond in the meantime, and requiring: that she not violate any federal, state or local law; that she comply with

---

[1] Defendant appeared before the undersigned, to whom the case was assigned as a United States District Judge for the Western District of Michigan. Notwithstanding the undersigned's appointment to the position of Circuit Judge for the Sixth Circuit Court of Appeals in June 2005, the undersigned has retained responsibility to see this case to conclusion.

all requirements prescribed by her Pretrial Supervision Officer, including participation in substance abuse rehabilitation; and that she either maintain full-time employment or be enrolled at Ferris State University in Big Rapids, making reasonable progress toward obtaining her Associate's Degree. Upon receipt of notice of compliance with these requirements and that defendant had graduated within a reasonable period of time, the Court intended to impose a sentence of "time served." In response, defendant Dorsey assured the Court that she was willing and able and would comply with these requirements. The government made no objection.

Defendant went on to distinguish herself, graduating *magna cum laude* with an Associate's Degree in Applied Science (Nuclear Medicine Technology) in May 2009, and receiving her Bachelor of Science degree *magna cum laude* in Health Care Systems Administration in August 2009. The Court was apprised of defendant's accomplishments and conferences were held with counsel on a periodic basis to receive updates on the status of this case. In a letter to the Court dated June 28, 2010, defendant expressed her gratitude for the opportunity to complete her education, but also her frustration at being unable to use her education to obtain employment because of the pendency of this case. She implored the Court for mercy. On January 26, 2011, the government filed a motion for entry of sentence:

> The United States of America respectfully moves this Court [for] entry of the sentence in this case, and respectfully recommends that this Court complete the sentencing of Crystal Lynn Dorsey and sentence her to (i) a custodial term of "time served" with no additional jail or prison term, (ii) no supervised release, (iii) no fine, and (iv) a special assessment of $100.

R. 55, Memorandum of Law at 3-4. Defendant responded by filing a motion to dismiss the indictment for excessive delay in sentencing. The Court took up both motions in a hearing conducted on April 26, 2011.

**II**

Defendant relies on Rule 32(b)(1) of the Federal Rules of Criminal Procedure in seeking dismissal, contending her right to a "sentence without unnecessary delay" has been violated:

> [S]ince she fulfilled the conditions of the delay of sentence with graduation from college the Government since that time has caused an unnecessary delay for the court to impose sentence at this time.
>
> Defendant contends the delay to impose sentence has denied defendant the right to due process guaranteed by the Fifth Amendment to the United States Constitution.

R. 57, Motion to Dismiss at 5.

A delay in sentencing can be considered a violation of the Fifth Amendment or the Sixth Amendment to the United States Constitution. In *United States v. Thomas*, 167 F.3d 299 (6th Cir. 1999), the court explained:

> In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court set forth four factors to determine whether a trial delay is unconstitutional: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. With regard to the prejudice factor, the Supreme Court directs us to consider three interests of the defendant "which the speedy trial right was designed to protect[:] . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532.

*Id.* at 303.

Under the Fifth Amendment, "a defendant maintains the right to due process in a criminal proceeding until entry of final judgment." *United States v. Sanders*, 452 F.3d 572, 577 (6th Cir. 2006). In determining whether a defendant's due process rights have been violated, the court should consider the reason for the delay and what, if any, prejudice defendant has suffered as a result of that delay. *Id.* at 580. *See also United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009). In *Sanders*, the

court explained that the defendant bears "a heavy burden of showing that she has been the victim of a fundamentally unfair process." *Id.* at 580.

Further, some courts have recognized the courts' inherent discretionary authority to dismiss an indictment for undue delay under Fed. R. Crim. P. 48(b). *United States v. Barken*, 412 F.3d 1131, 1136 (9th Cir. 2005); *United States v. Paredes-Batista*, 140 F.3d 367, 375-76 (2d Cir. 1998). Such authority is to be exercised only with proper caution in extreme circumstances. *Barken*, 412 F.3d at 1136; *Paredes-Batista* 140 F.3d at 376.

### III

The period of delay in this case between return of the indictment and entry of judgment, currently exceeding six years, is undeniably lengthy. Yet, it is apparent that defendant, the government, and the Court are all to blame for the delay. The Court initially delayed sentencing to allow defendant to return to school. The Court was convinced that defendant deserved a second chance. Thus, she was granted an opportunity to return to school and complete her degree at Ferris State University. After completing her studies in August 2009, defendant refrained for some seventeen months from seeking final disposition of the case in the hope that the government would decide to dismiss or reduce the charge against her. R. 64, Hearing Tr. at 6. Thus, it is apparent that defendant viewed the delay as serving her interests. She is partially responsible for the delay. The government, for its part, was in no hurry to have defendant sentenced because it hoped to secure her cooperation in a prosecution against another offender yet to be extradited to the United States from Canada. *See* R. 59, Response to Motion to Dismiss at 9. Consequently, the Assistant U.S. Attorney acknowledged that fault for the delay in sentencing is shared: "I think all the parties had some hand in this, and so I don't think anyone is blameless. I don't think any party acted in bad faith in this

case. I think it was just kind of a – I wouldn't say a perfect storm, but the interests aligned in such a way that there was going to be this 18-month or so period of delay. . . ." R. 64, Hearing Tr. at 8. Indeed, both the parties and the Court were willingly complicit in the circumstances that caused the delay in bringing this case to closure.

Despite the "presumption of prejudice" that may be deemed to attach in the case of such a lengthy delay, *see Thomas*, 167 F.3d at 304, defendant has failed to show that she has been unfairly prejudiced by the delay in any traditional sense. *See United States v. Schreane*, 331 F.3d 548, 558 (6th Cir. 2003) (identifying three recognized forms of prejudice as (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the defense will be impaired). The motivation for the delay was on all sides reasonable and well-meaning. Considering the totality of the circumstances, and especially the collaborative reasons for the delay, the court cannot conclude that dismissal of the indictment is *compelled*. There has been no violation of defendant's constitutional rights.

If sentence is imposed—even just to time served—and judgment entered, defendant's guilty plea conviction will be finalized in a judgment of felony conviction that will handicap her employment efforts for the rest of her life. But this is not the consequence of unreasonable or unnecessary delay. The fact of a felony conviction would be the product of defendant's own knowing and voluntary admission of guilt under oath at the plea hearing in January 2005.

Yet, this unique and confounding totality of circumstances, if allowed to follow its ordinary course and culminate in sentencing, would ironically make defendant "the victim of a fundamentally unfair process." *Sanders*, 452 F.3d at 580. For if defendant is sentenced and thereby formally branded a "felon," she will have expended her best efforts during this period of collaborative delay

in pursuit of laudatory educational goals, with the cooperation and encouragement of all the justice system professionals, only to find her accomplishments rendered largely hollow and illusory, undermined by the same justice system that cheered her onward. Such a result would go against the grain of those "fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." *See id.* (internal citations omitted). The Court simply will not countenance such a result.

In nineteen years as a United States District Judge and Circuit Judge, I can recall no other case where the prospect of sentencing the defendant for an offense admittedly committed so clearly disserved the cause of justice. Considering the events of the last six years and the good fruit they have borne in defendant's life; considering that a sentencing court is obliged under the law to impose a sentence sufficient but not greater than necessary to accomplish the purposes of sentencing; and considering that *any* sentence would have the effect of irrevocably negating much of the progress made to date; it is clear that this case uniquely warrants the extraordinary relief of dismissal.

In so concluding, the Court fully recognizes that the government did not make an express promise to dismiss or reduce the charge against defendant if she completed her education and turned her life around. The Court fully recognizes that the government's charging decision, its assessment of defendant's assistance in investigating and prosecuting another offender, and its acquiescence in the postponement of sentencing, are all facially appropriate exercises of prosecutorial discretion. Yet, the chief impetus for the instant decision is the same hope that the Court sensed in 2005 when Crystal Dorsey first appeared for sentencing. What the Court saw in defendant then—personal character, intellectual ability, and familial support—are assets that she has manifestly used to improve her lot in the ensuing six years in reliance upon at least implicit assurances that her efforts

would be rewarded with favorable treatment by the justice system. To ignore her plea for mercy now would be unjust.

An overarching objective of the justice system's intervention is to restore the offender to right relationship with society. This objective is best served at this stage by termination of this case. Nothing positive is to be gained by imposing sentence. The only consequences of sentencing defendant at this stage would be negative and deleterious—unnecessarily burdening defendant with a felony conviction for the rest of her life. To date, it is apparent that the justice system's intervention has been successful; but further action could only be counter-productive.

## IV

Accordingly, in the exercise of this Court's discretion under Fed. R. Crim. P. 48 (b), defendant's motion to dismiss the indictment is **GRANTED**. The government's motion for entry of sentence is **DENIED** as moot. An order of dismissal shall issue forthwith.

Dated: September 27, 2011

DAVID W. McKEAGUE
UNITED STATES CIRCUIT JUDGE